UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTWONE CHAPMAN,

                Petitioner,

v.                                          **DECISION AND ORDER**
                                                                  09-CR-086S
                                                                  09-CR-280S
                                                                  11-CV-608S
UNITED STATES OF AMERICA,                11-CV-610S

                Respondent.

## I. INTRODUCTION

Petitioner, Antwone Chapman, moves to vacate, set aside, or correct his sentence and conviction pursuant to 28 U.S.C. § 2255. For the reasons discussed below, this Court finds a hearing on this motion unnecessary and denies Chapman's motion.[1]

## II. BACKGROUND

On October 23, 2009, before United States Magistrate Judge Hugh B. Scott, Chapman entered into an agreement with the Government in which he agreed to plea guilty to Count Three of Indictment 09-CR-86S, which charged him with possessing 50 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Pursuant to Rule 20(a)(1)-(2) of the Federal Rules of Criminal Procedure, Chapman also agreed to plea guilty to Count 1 of Indictment CR NO. 6-09-557,[2] which was

---

[1] § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. "By implication, if the reviewing court finds that the record of the underlying criminal action does conclusively show that the petitioner is entitled to no relief, it may dismiss the petition on the basis of the parties' submissions and need not hold an evidentiary hearing." Yushuvayev v. United States, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008).

[2] Docketed as 09-CR-280 in this District.

filed in the District of South Carolina. That Count charged him with (1) participating in conspiracy to make a false statement in connection with the acquisition of firearms and (2) illegally transporting firearms in commerce, both in violation of 18 U.S.C. § 371.

The parties further agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that, if the plea were accepted by this Court, Chapman would be sentenced to a 180-month term of imprisonment. (Plea Agreement, ¶ 18; Docket No. 4); see Fed. R. Crim. P. 11(c)(1)(C) ("[T]he plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case . . . (such a recommendation or request binds the court once the court accepts the plea agreement)") (parenthesis in original). According to the Government, the 15-year sentence potentially saved Chapman eight years from his sentence, as the Government agreed to refrain from filing a 21 U.S.C. § 851 Information (which would have increased his exposure by 10 years) if Chapman took the plea.[3]

At his plea hearing, Chapman indicated that he understood the agreement:

> THE COURT: You understand that there is a combination of these terms, but they are to run consecutively. It's a 120-month term related to the charge that emanates from this District, and a 60-month term that relates to the charges in South Carolina?
> THE DEFENDANT: Yes, sir.
> THE COURT: To run one after the other. Do you understand that?
> THE DEFENDANT: Yes.

(Plea Hr'g Tr., at 29-30; Docket No. 7.)

---

[3]Chapman agreed to the maximum sentence—five years—on the South Carolina trafficking charge. The Government believed that he would have received only 3.5 years on that charge under the Guidelines. Thus, the net savings, as calculated by the Government, amounted to roughly 8.5 years.

He also indicated that he was not coerced into taking the plea:

> THE COURT: Has anyone threatened you, again, pressured you or promised you anything to get you to plead guilty here?
> THE DEFENDANT: No, Your Honor.

(Id., at 16.)

Judge Scott, convinced that Chapman's plea was satisfactory, recommended that this Court accept the plea. (Docket No. 10.)

At some point thereafter, however, Chapman grew uneasy about the plea agreement, and this Court convened the parties on January 19, 2010 to discuss Chapman's concerns. At that proceeding, Chapman indicated that he was unhappy with his retained attorney, Thomas Eoannou, for being unresponsive to his calls, sending Eoannou's partner—Jeremy Schwartz—to court proceedings, and providing Chapman with insufficient time to consider the plea. (1/19/10 Hr'g Tr., at 5-8; Docket No. 34) Chapman also indicated that he signed the plea agreement hastily:

> THE DEFENDANT: Even when I signed that plea, I didn't think about it, because it happened so fast, I wanted to say like I wanted to plea to like unknown charges. There was a lot of things that was on my mind I couldn't think of at that time. So I just -- like it was kind of unfair to me, that's all.

(Id., at 9.)

This Court held a second proceeding regarding Chapman's concerns the next month, on February 9, 2010. There, considering Chapman's frustrations with his attorneys, this Court appointed another attorney to help him resolve any lingering doubts about the plea agreement—in essence, to get a "second opinion." That exchange went as follows:

> THE COURT: So you will get the benefit of being able to work with another attorney to clear up any issues that you think you have with that plea agreement, and that meeting with that

3

> attorney will be with out the presence of Mr. Schwartz and Mr. Bruce, so that you'll have free opportunity to at least address what your concerns are. And I'll get a report back here, and then -- at least that's my plan right now, to see how we will proceed after that. Fair enough?
> THE DEFENDANT: Yes, sir.

(2/9/10 Hr'g Tr., at 6; Docket No. 37)

Chapman and his newly assigned attorney, Robert Convissar, reported back to this Court on March 16, 2010. Convissar informed this Court that, after reviewing all the materials and having a two-and-a-half-hour discussion with him, Chapman was satisfied with the agreement. This Court inquired further and Chapman affirmed that position:

> THE COURT: So you're comfortable with where you stand now, Mr. Chapman?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: All right. And it was of assistance to you to have Mr. Convissar get together and try to address what your concerns were?
> THE DEFENDANT: Very much. It was a very - a blessing. Thank you.

(3/16/12 Hr'g Tr., at 5; Docket No. 21.)

On July 20, 2010, this Court accepted Judge Scott's Report and Recommendation and Chapman's Rule 11(c)(1)(C) plea; in accordance with the plea, this Court sentenced Chapman to a term of imprisonment of 180 months. (See Judgment; Docket No. 27.) Shortly thereafter, Chapman filed a timely notice of appeal. (Docket No. 28.) But on January 20, 2011, the Second Circuit dismissed the appeal for failure to pay the filing fee. (Docket No. 31.) Chapman filed the present motion on July 18, 2011; the Government moved to dismiss it two months later on September 27, 2011. (Docket No. 35.)

On November 10, 2011, however, Chapman filed a letter with this Court (dated October 19, 2011), stating that he wanted to "withdraw my [2255] complaint with the

4

understanding that I[']m working on getting my prior conviction vacated." (Chapman Letter; Docket No. 44.)  He continued, "Overall[,] I would like to withdraw as of now[;] if that's not an option[,] then [I'm] asking the court for an extension on my response [to the Government's motion to dismiss]." (Id.)

On November 21, 2011, considering the applicable statute of limitations and Chapman's *pro se* status, this Court granted his letter-motion insofar as he sought an extension of time to reply to the Government's motion to dismiss. (Docket No. 42.)[4] Despite the extension, no such reply was filed.

### III.  DISCUSSION

**A.    Standard of Review**

28 U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences.  In pertinent part, that section provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect

---

[4]This Order was filed only in case number "09-CR-280." The Clerk of the Court will be directed to file the Order in case number "09-CR-86" as well.

which inherently results in a complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

When a defendant waives his right to appeal or collaterally attack a sentence within an agreed upon range, he may not, absent limited exceptions, appeal the merits of a sentence conforming to the agreement. United States v. Hawkins, 513 F.3d 59, 61 (2d Cir. 2008). These exceptions include:

> [W]hen the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility.

Held v. United States, No. 3:08CV1189(MRK), 2009 WL 179820, at *3 (D. Conn. Jan. 20, 2009) (quoting United States v. Gomez–Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

"The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record 'conclusively show' that the defendant is not entitled to relief." Blue v. United States, No. 11-CV-6501-CJS, 2012 WL 2175783, at *2 (W.D.N.Y. Feb. 14, 2012) (quoting 28 U.S.C. § 2255).

**B.    Chapman's § 2255 Motion**

Chapman advances the following arguments: (1) he was coerced into taking the plea, (2) he was denied effective assistance of counsel because (a) Eoannou was "almost never present in court" and always sent Schwartz in his place, and because (b) Eoannou engaged in insufficient discovery; (3) Assistant United States Attorney ("AUSA") Anthony

Bruce lied regarding a possible sentence deduction.

The Government argues that Chapman's claims are meritless and precluded by the waiver-of-appeal-and-collateral-attack provision contained in the plea agreement.

Indeed, Chapman agreed to waive "the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the term of imprisonment set forth in Section II, ¶ 18 [180 months]." (Plea Agreement, ¶ 24.)This fact was also made clear during the plea allocution:

> THE COURT: First, you're going to waive your right to appeal
> a sentence that falls within the sentencing guidelines.
> Do you understand that?
> THE COURT: If the judge -- if the sentencing judge
> sentences you within the sentencing guidelines, you will waive
> your right to appeal. Do you understand that fully?
> THE DEFENDANT: Yes, sir.

(Plea Hr'g Tr., at 21.)

"Nevertheless, because of the requirement of a knowing and voluntary waiver of the right to appeal, a petitioner should not be deemed to have waived the right to challenge his sentence on the basis that his plea or waiver was not knowing and voluntary, including by asserting that the ineffective assistance of his counsel deprived him of the ability to make a knowing and voluntary plea." Ramirez v. United States, 963 F. Supp. 329, 332 (S.D.N.Y. 1997).

Consequently, the appeal-waiver provision does not bar Chapman's coercion claim. And, although not specifically argued by Chapman, this Court presumes, given his *pro se* status, that Chapman seeks to argue that his appeal waiver was unenforceable because the waiver was itself a product of ineffective assistance of counsel. See United States v. Oladimeji, 463 F.3d 152, 155 (2d Cir. 2006); Yushuvayev, 532 F. Supp. 2d at 470 ("Thus,

Oladimeji clearly contemplates that a defendant alleging ineffective assistance of counsel shall not be barred by a waiver of the right to appeal from bringing a collateral attack under Section 2255 asserting that his counsel's recommendation that he accept the plea agreement containing the waiver was itself ineffective assistance"); United States v. Logan, Nos.09-CR-296(ADS), 10-CV-2993(ADS), 2012 WL 616257, at *5, --- F. Supp. 2d ---- (E.D.N.Y. Feb. 23, 2012) (finding waiver clause unenforceable when validity of waiver questioned via an ineffective-assistance-of-counsel claim).

Thus, the merits of Chapman's motion, relating to coercion and ineffective assistance of counsel, will be addressed.[5]

**1.   Coercion**

Chapman alleges that he was coerced into accepting the plea agreement because his attorney told him "things were looking good" and the judge "had been going under guidelines." (Motion, at 4; Docket No. 32.) He also suggests that his attorney told him that the trafficking sentence from South Carolina would run concurrently, as opposed to consecutively, with the sentence from this District. (Id.) Chapman further asserts that his attorney told him that he had no choice but to take the plea agreement or "get life in prison." (Id., at 5.)

For the following reasons, these allegations fail to justify the relief requested.

First, Chapman offers no specifics supporting the bare accusation that he had no choice but to accept the plea or face life in prison. He simply inserts it, disjointedly, at the end of his motion. Without these crucial supporting facts, this accusation need not be

---

[5]See *infra,* at 13, regarding the waiver's effect on Chapman's claim concerning a potential sentence deduction.

8

credited. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir.1977) (a § 2255 motion supported by a "sufficient" affidavit including detailed and controverted issues of fact warrants a hearing, but "bald allegations" unsupported by evidentiary facts do not).

Second, Eoannou denies that he ever represented to Chapman that if he did not take the plea, he would receive life imprisonment. Rather, he explains that he spent time discussing with Chapman that a conviction in these cases would subject him to the possibility of life in prison. But he explains, "[I]n telling Chapman this, I told him that, in my view, his maximum exposure based on trial convictions, even without the plea, but after a § 851 information was filed, would be somewhere in the range of 23-25 years." (Eoannou Affidavit, ¶ 5(d); Docket No. 37-1.) This is credible explanation. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) ("The court then determines whether, viewing the evidentiary proffers, *where credible*, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief") (emphasis added).

Finally, whether in relation to Chapman's claim that his attorneys initially overestimated the likelihood of a favorable sentence, or in relation to his claim that he would face life in prison if he rejected the plea, Chapman's sworn testimony at the plea allocution—which carries a strong presumption of verity, see Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977)—and his testimony in the later proceedings before this Court, conclusively demonstrate that Chapman accepted the plea knowingly and voluntarily. See Puglisi, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding"); Papetti v. United States, No. 09-

9

3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) ("The allocution by itself is sufficient to find that [petitioner] understood that there was no guarantee that he would receive any particular sentence 'regardless of what counsel had allegedly 'promised' him before hand'" (citation omitted)).  At the plea hearing:

> THE COURT: Has anyone threatened you, again, pressured
> you or promised you anything to get you to plead
> guilty here?
> THE DEFENDANT: No, Your Honor.

(Plea Hr'g, at 20.)

Later at the hearing, Judge Scott ensured that Chapman was satisfied with the plea and that he was not pressured into accepting it:

> THE COURT: Again, no one has pressured you or
> threatened you or promised you anything with respect to
> pleading
> guilty here, correct?
> THE DEFENDANT: No, sir.
> MR. BRUCE: Other than what's in the plea agreement.
> THE COURT: Other than what's in the plea agreement;
> is that correct?
> THE DEFENDANT: Yes, sir.

(Id., at 31.)

He also said that he understood the plea:

> MR. SCHWARTZ: Right. And I've explained to
> Mr. Chapman, this is an 11(c)(1)(C), it's the agreement of the
> parties. Judge Skretny is, of course, free to reject that, but that
> would vitiate the plea, but Judge Skretny does have the
> authority to impose a reasonable sentence. However, under
> this agreement, if he wants to follow this agreement and keep
> this agreement, he would have to set a 180-month sentence.
> THE COURT: That's correct. Do you understand that?
> Do you have any questions?
> THE DEFENDANT: No, sir.

(Id., at 31.)

Chapman later expressed misgivings about the plea, possibly calling into question his replies at the plea hearing. But in response to those concerns, this Court held three additional hearings and assigned Chapman an independent attorney with whom he could discuss his concerns. After meeting with Chapman, and upon returning to this Court, his newly appointed attorney advised this Court that Chapman understood and was satisfied with the plea. Chapman assented to this representation:

> THE COURT: So you're comfortable with where you stand now, Mr. Chapman?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: All right. And it was of assistance to you to have Mr. Convissar get together and try to address what your concerns were?
> THE DEFENDANT: Very much. It was a very - a blessing. Thank you.

(3/16/12 Tr. Hr'g, at 5.)

Indeed, it was clear that whatever concerns he once had were assuaged in his meeting with Convissar; he even interjected near the end of the proceeding to thank this Court for the opportunity to discuss his case with Convissar. (See id., at 11.) Convissar also submitted an affidavit indicating that Chapman was satisfied with the plea after they discussed it. (Convissar Aff., ¶ 8; Docket No. 37-1.) As such, there is no basis for Chapman's claim that he was coerced into accepting a plea, and his motion on this ground is therefore denied. See Contino v. United States, 535 F.3d 124, 127-28 (2d Cir. 2008) (per curiam) (defendant failed to make a substantial showing that his plea was not voluntary or intelligent, or that he received ineffective assistance of counsel, where it was clear from the record, including the indictment, the signed plea agreement, and the allocution at the plea proceeding, that he understood the nature of charges against him).

### 2. Ineffective Assistance of Counsel

Neither of the next two charges, each alleging some form of ineffective assistance of counsel, warrant the relief requested.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend VI. It is well-established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To establish an ineffective-assistance-of-counsel claim, a defendant must satisfy two requirements: he must show that counsel's performance was deficient and that the deficient performance prejudiced the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S .Ct. 2052, 80 L. Ed. 2d 674 (1984). When a conviction is secured by way of plea, the second Strickland factor is modified to require a defendant to demonstrate that, but for counsel's unprofessional errors, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992).

In his first charge—that Schwartz, not Eoannou, acted as his attorney—Chapman does not accuse his attorneys of deficient performance, much less that he was prejudiced thereby. Further, Eoannou avows that when Chapman retained him, he explained to him that his firm, *i.e.*, Schwartz and himself, would be representing him and that as Schwartz's employer, he would review all recommendations and make all the final decision regarding his case. (Eoannou Aff., ¶ 5(a).) This challenge is thus readily set aside.

Chapman also complains that, despite his repeated requests, his attorneys did not get discovery materials from the Government. This bare statement, however, is buttressed with no specificity—he does not even state what "discovery" he wanted—and Chapman makes no attempt, as he must, to demonstrate how this information, if received, would have led him to plead not guilty. See Hill, 474 U.S. at 58-59; see also Yushuvayev, 532 F. Supp. 2d at 470 (for waiver to be unenforceable, the petitioner must assert that his counsel's recommendation that he accept the plea agreement containing the waiver was itself ineffective assistance).

Furthermore, Schwartz recalls these requests, but testifies that the desired "discovery" fell under 18 U.S.C. § 3500, which the defense is not entitled to, if it all, until trial. (Schwartz Aff., ¶ 5(c); Docket No. 37-1.) Therefore, this claim also fails to warrant relief from his conviction and sentence.

### 3. Federal Rule of Criminal Procedure 35(b)

Finally, Chapman asserts that he is entitled to relief because AUSA Bruce said that he "may move for Rule 35(b) (sic) at a future date" but then at sentencing "went back on his word and stated he never said that." (Motion, at 4.) As an initial matter, this claim is likely barred by Chapman's waiver of his right to appeal or collaterally attack his sentence. Unlike, the two challenges already discussed, this claim does not concern the voluntariness of his plea.[6]

But, even considering the merits, and construing this claim liberally, it still fails to state a ground for relief.

---

[6]There is no dispute that there was no promise made regarding a Rule 35(b) motion in the plea agreement.

Rule 35(b)(2) authorizes the court to reduce a defendant's sentence as a result of his substantial assistance "[u]pon the government's motion made more than one year after sentencing." By its own terms, Rule 35(b) relief is only available when the Government determines that the cooperation provided by the defendant warrants such a motion. See United States v. DeFeo, No. 90 Cr. 250, 2008 WL 2557425, at *4 (S.D.N.Y. June 26, 2008) Here, as evidenced by Chapman's own submission, the Government never promised to make a Rule 35(b) motion, but at most, indicated that it "may" do so. The Government chose not to, as it was free to do.[7] And Chapman does not allege—nor is there any indication—that this decision was based on an improper motive. See, e.g., United States v. Suarzo, No. 96 Cr. 450, 2000 WL 1558737, at *2 (S.D.N.Y. Oct. 18, 2000) (court's ability to review the prosecutor's decision not to move under Rule 35(b) is limited to circumstances where "the refusal was based 'on an unconstitutional motive,' such as the defendant's race or religion") (quoting Wade v. United States, 504 U.S. 181, 185–86, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992)). Accordingly, Chapman's last claim is denied.

## C.    **Certificate of Appealability**

For a certificate of appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make the required "substantial showing," the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Astuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations omitted). Chapman has

---

[7]Convissar also testified that he explained this to Chapman and that Chapman was satisfied. (Convissar Aff., ¶ 7; Docket No. 37-1.)

made no such substantial showing of the denial of a constitutional right in this case, and a certificate of appealability is therefore denied.

## IV.  CONCLUSION

Chapman's motion to vacate, set aside, or correct his sentence and conviction is denied. If Chapman wishes to appeal, he must file a notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V.  ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 29 in 09-CR-280; Docket No. 32 in 09-CR-86) is DENIED.

FURTHER, that Respondent's Motion to Dismiss (Docket No. 35 in 09-CR-280; Docket No. 38 in 09-CR-86 ) is DENIED as moot.

FURTHER, that the Clerk of the Court shall file this Court's November 18, 2011 Order (Docket No. 42) from case 09-CR-280 in the related case, 09-CR-86.

FURTHER, that a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is DENIED.

FURTHER, that it is hereby certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and leave to proceed as a poor person is therefore DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court is directed to close cases 11-CV-608 and 11-CV-610.

SO ORDERED.

Dated:     August 29, 2012
           Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
